Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| INMOBILIARIA MARGARITA, INC.<br><br>Apelante<br><br>v.<br><br>WANDA I. FINES RODRÍGUEZ H/N/C C.C.D. CASTILLO DE ARENA<br><br>Apelado | TA2025AP00387 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.:<br>F CD2014-1277<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de diciembre de 2025.

Comparece Inmobiliaria Margarita Inc. (en adelante, Inmobiliaria y/o parte apelante) mediante un *Recurso de Apelación*, para solicitarnos la revisión de la *Sentencia* emitida y notificada el 8 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Carolina.[1] Mediante la *Sentencia* apelada, el foro de instancia declaró *Ha Lugar*, parcialmente, la demanda instada por la parte apelante, específicamente, en cuanto a la acción sobre cobro de dinero. Sin embargo, denegó conceder el remedio solicitado en torno al resto de las causas de acciones interpuestas en la demanda, así como la reconvención incoada por la señora Wanda I. Fines Rodríguez (en adelante, señora Fines Rodríguez o parte apelada), la cual fue desestimada.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

---

[1] A nivel del foro de instancia, el expediente judicial es uno físico, por lo que a los fines de esta Sentencia citaremos los documentos relacionados al caso directamente de los autos originales y/o del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA). Véase el SUMAC TA, a la Entrada Núm. 1, Apéndice 2.

I

El caso del título inició, el 24 de octubre de 2014, con la presentación de una *Demanda* instada por Inmobiliaria sobre cobro de dinero, por falta de pago de ciertos cánones de arrendamiento.[2] En el pliego, Inmobiliaria adujo ser dueña de un solar y local comercial localizado en Carolina, Puerto Rico. Indicó que, el 6 de junio de 2009, suscribió un contrato de arrendamiento con la señora Fines Rodríguez y que, posteriormente, el 1 de agosto de 2011, se enmendó el mismo para añadir un local adicional y aumentar así la cantidad del canon por concepto de renta. Conforme surge de las alegaciones, el término del contrato de arrendamiento venció el 31 de julio de 2017. Además, señaló que el canon era de dos mil ochocientos dólares ($2,800.00) mensuales, pagaderos en o antes del día cinco (5) de cada mes, con una cláusula de aumento escalonado anual de tres por ciento (3%), la cual comenzó a escalar el 1 de agosto de 2012. Alegó que la parte apelada se encontraba incumpliendo con su obligación de pagar dichos cánones hasta que abandonó la propiedad arrendada, a mediados de agosto de 2014, dejando al descubierto los dos mil ochocientos dólares ($2,800.00) de ese mes. Asimismo, señaló que la parte apelada debía tres mil novecientos ochenta y dos dólares con cincuenta centavos ($3,982.50), por concepto de cargos por retrasos, penalidades, y cheques sin fondos, y ciento tres mil seiscientos dólares ($103,600.00), correspondientes a los cánones de arrendamiento contraídos hasta el vencimiento del contrato. Manifestó que los requerimientos de pago de los cánones vencidos habían sido infructuosos. A tenor, reclamó que se condenara a la parte apelada al pago de ciento diez mil trescientos ochenta y dos dólares con cincuenta centavos ($110,382.50), más las costas, gastos y honorarios de abogado, por la suma de treinta mil novecientos dólares ($30,900.00).

Luego, el 27 de marzo de 2015, Inmobiliaria interpuso una *Demanda Enmendada* a los fines de incluir como demandado al cónyuge de la señora Fines Rodríguez, Erick Cintrón Medero.[3] Mediante esta, esbozó las mismas

---

[2] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Anejo 1.
[3] *Íd.,* Anejo 2.

alegaciones y solicitó los mismos remedios que surgen de la Demanda original.

En reacción, el 3 de mayo de 2016, la parte apelada presentó su *Contestación a demanda enmendada*, a la cual le incluyó una r*econvención*.[4] En cuanto a la contestación, en términos generales, negó la mayoría de las alegaciones. Se desprende, además, que, como parte de la contestación, la parte apelada presentó sus defensas afirmativas. Por otro lado, en su reconvención alegó que el contrato suscrito el 1 de agosto de 2011, disponía que la propiedad arrendada sería destinada al establecimiento de un centro de cuido, educación preescolar y estudios supervisados. Expresó que Inmobiliaria tenía la obligación de mantener el local en aceptable estado de conservación. No obstante, señaló que, durante la vigencia del contrato, la estructura comenzó a tener unos desperfectos estructurales los cuales provocaron que las agencias pertinentes prohibieran el uso del local para el cuido de menores. En consecuencia, alegó que se vio obligada a cerrar el local y a entregar la propiedad a Inmobiliaria. De otra parte, adujo que Inmobiliaria no informó sobre las fallas estructurales al momento de formalizar el contrato, lo cual constituyó un vicio en el consentimiento. Además, expresó que la parte apelante se negó a reparar adecuadamente las fallas estructurales notificadas. A tenor, solicitó al foro de instancia que se condenara a Inmobiliaria al pago de doscientos cincuenta mil dólares ($250,000.00), por concepto de lucro cesante y angustias mentales, así como al pago por concepto de costas, gastos, y honorarios de abogado.

Posteriormente, el 13 de junio de 2016, Inmobiliaria presentó su *Contestación a reconvención y defensas afirmativas*.[5] Señaló que la parte apelada hizo varias mejoras a los locales arrendados sin consentimiento y en contravención con lo estipulado en el contrato. Así, pues, expuso que los fallos estructurales fueron causados por esta al romper el techo de la propiedad para instalar un equipo de aire acondicionado. Entre sus

---

[4] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Anejo 4.
[5] *Íd.,* Anejo 5.

defensas afirmativas, adujo que la señora Fines Rodríguez incumplió con los términos y condiciones del contrato. Asimismo, indicó que los daños reclamados no le eran atribuibles, toda vez que fueron el resultado de actuaciones y omisiones de la parte apelada. Por otra parte, señaló que la señora Fines Rodríguez emitía cheques sin fondos, hacía pagos tardíos y se negaba a pagar las penalidades estipuladas en el contrato. En mérito de lo expuesto, solicitó que se declarara *No Ha Lugar* a la reconvención y se dictara sentencia concediendo los remedios solicitados en la *Demanda*.

Luego de algún tiempo, el 5 de diciembre de 2019, la parte apelada interpuso una *Moción solicitando se dicte sentencia sumaria*.[6] En su pliego alegó que, para la fecha en que Inmobiliaria presentó la *Demanda Enmendada*, esta carecía de personalidad jurídica para presentar una reclamación en su contra. Explicó que, desde el 2008 hasta el 2014, la parte apelante incumplió reiteradamente con su obligación de presentar los correspondientes Informes Anuales de acuerdo con La Ley General de Corporaciones, por lo que el certificado de incorporación le fue revocado. Sostuvo que lo anterior, era razón suficiente para justificar la desestimación con perjuicio de la *Demanda Enmendada*. Dado a lo anterior, peticionó que se declarara *No Ha Lugar* la *Demanda*.

Meses más tarde, el 4 de marzo de 2020, Inmobiliaria presentó su *Oposición a moción de sentencia sumaria*.[7] Adujo que la parte apelada no cumplió con la Regla 36.3 de Procedimiento Civil.[8] Además, indicó que la revocación del certificado de incorporación no incidía sobre la causa de acción, toda vez que no invalidaba el contrato que había entre las partes. Así, pues, solicitó la desestimación del pedimento.

En respuesta, mediante *Resolución*, emitida el 17 de febrero de 2021, y notificada el 1 de marzo del mismo año, el foro *a quo* declaró *No Ha Lugar* la solicitud de sentencia sumaria.[9]

---

[6] Véase autos originales del Tribunal de Primera Instancia (TPI).
[7] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Anejo 9.
[8] 32 LPRA Ap. V, R. 36.3.
[9] Véase autos originales del TPI; Véase, además, SUMAC TA a la Entrada Núm. 1, Apéndice 3, Anejo 10.

Por otro lado, mediante una *Orden* y una *Sentencia Parcial* emitidas ambas el 10 de febrero de 2022, y notificadas el día 16, del mismo mes y año, el tribunal de instancia eliminó las alegaciones de la parte apelada, por incumplimiento con ciertas órdenes que le fueron emitidas, le anotó la rebeldía y desestimó la reconvención interpuesta en este caso.[10]

Pasado un tiempo, el 20 de mayo de 2022, Inmobiliaria incoó una *Solicitud de sentencia sumaria*.[11]  Acentuó que el foro primario, mediante la *Orden* y la *Sentencia Parcial* del 10 de febrero de 2022, le anotó la rebeldía a la parte apelada y desestimó la reconvención, por lo que arguyó que se admitieron todos los hechos bien alegados en la *Demanda*. A esos efectos, indicó que, al no existir controversias de hechos esenciales y pertinentes, la sentencia sumaria procedía como cuestión de derecho. Solicitó que se dictara sentencia sumaria a su favor y se condenara a la parte apelada al pago de las sumas reclamadas.

Posteriormente, el 28 de julio de 2022, ocurrieron dos (2) eventos procesales. El *primer* evento fue que la parte apelada presentó una *Solicitud de relevo de Sentencia Parcial de conformidad con la Regla 49.2 de Procedimiento Civil.*[12] En esencia, sostuvo que no se configuraban los elementos necesarios para la eliminación de las alegaciones y desestimación de la reconvención. Señaló que, para la fecha del 17 de febrero de 2021, no contaba con representación legal. A tenor, solicitó que se declarara *Ha Lugar* su solicitud.

Por otro lado, el *segundo* evento fue que, la parte apelada interpuso una *Urgente moción en torno a réplica a moción de sentencia sumaria presentada por la parte demandante*.[13] Expuso que, en esa misma fecha, presentó una solicitud de relevo de sentencia en cuanto a una sentencia parcial emitida el 10 de febrero de 2022, y notificada el día 16, del mismo mes y año. Solicitó al foro de instancia que pospusiera la consideración de

---

[10] Véase autos originales del TPI; Véase, además, SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Anejo 11.
[11] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Anejo 12.
[12] *Íd.,* Anejo 13, págs. 3-12.
[13] *Íd.*, págs. 1-2.

la solicitud de sentencia sumaria, hasta tanto atendiera la solicitud sobre relevo de sentencia.

Luego de varios incidentes procesales innecesarios pormenorizar, mediante *Orden*, emitida el 6 de septiembre de 2022, y notificada el día 13, del mismo mes y año, el foro de instancia dejó sin efecto la *Sentencia Parcial* emitida el 10 de febrero de 2022.[14]

Así las cosas, el 11 de octubre de 2022, la parte apelada presentó su *Oposición a moción de sentencia sumaria*.[15] Planteó que la sentencia sumaria presentada por la parte apelante no procedía en derecho. Explicó que Inmobiliaria partió de la premisa de que las alegaciones de la reconvención fueron eliminadas, por lo que procedía que todos los hechos bien alegados de la *Demanda* se dieran por admitidos. Sin embargo, indicó que el foro primario dejó sin efecto la sentencia mediante la *Orden*, notificada el 13 de septiembre de 2022, por lo que la solicitud de sentencia sumaria presentada por la parte apelante no procedía y debía ser declarada *No Ha Lugar*.

En respuesta, mediante *Resolución*, emitida el 8 de noviembre de 2022, y notificada el día 16, del mismo mes y año, el foro primario declaró *No Ha Lugar* la solicitud de sentencia sumaria.[16] Empero, en su dictamen emitió ocho (8) determinaciones de hechos las cuales se encuentran detalladas más adelante en esta sentencia[17] y que se mantenía en controversia lo siguiente:

1. Determinar si la parte demandada incumplió o no el contrato de arrendamiento otorgado con Inmobiliaria;
2. Si la demandada incumplió el contrato entre las partes, determinar si lo hizo por justa causa;
3. Si la demandada incumplió el contrato injustificadamente, determinar los cánones de arrendamiento que adeudaría a la parte demandante, así como determinar y valorar los daños que dicho incumplimiento pudo causar a la demandante;
4. Determinar si las actuaciones de la demandada justifican que se le condene al pago de honorarios de abogados.[18]

---

[14] Véase autos originales del TPI.
[15] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Anejo 14.
[16] *Íd*., Anejo 15.
[17] Véase nota 28 al pie de página.
[18] SUMAC TA, a la Entrada 1, Apéndice 3, Anejo 15, págs. 5-7.

En el dictamen, el tribunal de instancia concluyó que era imposible disponer de las controversias planteadas por la vía sumaria, por lo que ordenó la continuación de los procedimientos.

Por otro lado, mediante *Orden*, emitida ese mismo 8 de noviembre, y notificada, igualmente, el 16 de noviembre de 2022, el foro *a quo* dio por concluido el descubrimiento de prueba y ordenó a las partes a presentar el informe de conferencia con antelación a juicio.[19]

Tiempo más tarde, el 19 de mayo de 2023, las partes presentaron un *Informe de conferencia con antelación a juicio*.[20] A tenor, el 15 de agosto de 2023, fue celebrada la vista sobre conferencia con antelación a juicio.[21]

Luego de varios trámites innecesarios pormenorizar, mediante *Orden*, emitida el 3 de febrero de 2025, y notificada el día 7, del mismo mes y año, el tribunal de instancia señaló el juicio en su fondo.[22]

El juicio en su fondo se celebró el 8 de abril de 2025.[23] La prueba testifical recibida por el foro de instancia consistió en los testimonios de los siguientes testigos: por la parte apelante, testificó el señor Pedro Gómez Zaiter y el señor Delfos Ochoa Villavizinis; mientras que, por la parte apelada, atestiguó la señora Fines Rodríguez.[24] Por otro lado, se admitió

---

[19] SUMAC TA, a la Entrada 1, Apéndice 3, Anejo 15, págs. 1-2.
[20] *Íd.,* Anejo 16.
[21] Véase autos originales del TPI.
[22] SUMAC TA, a la Entrada Núm. 3, Apéndice 3, Anejo 17. Conviene mencionar que, mediante esta *Orden*, el foro de instancia detalló ciertas incidencias acaecidas en el caso del título, las cuales impidieron que, aun cuando el juicio en su fondo había sido señalado en ocasiones previas, no se había podido celebrar.
[23] SUMAC TA, a la Entrada Núm. 1, Apéndice 2, pág. 2.
[24] *Íd.,* Apéndice 3, Anejo 55, págs. 7-15, págs. 15-60, págs. 61-91, respectivamente.

como prueba documental de Inmobiliaria la suma de veintinueve (29) documentos,[25] mientras que, por la parte apelada, se admitieron siete (7).[26]

Producto del juicio en su fondo, el 8 de mayo de 2025, *el foro a quo* emitió y notificó la *Sentencia* objeto de revisión.[27] Mediante la antedicha *Sentencia*, el foro de instancia declaró, parcialmente, *Ha Lugar* la demanda instada por la parte apelante, específicamente, en cuanto a la acción sobre cobro de dinero. No obstante, denegó conceder el remedio solicitado en torno al resto de las causas de acciones interpuestas en el pliego, así como la reconvención incoada por la parte apelada, la cual fue desestimada.

Como parte del dictamen emitido, el tribunal apelado incorporó por referencia las determinaciones de hechos no controvertidos, producto de la *Resolución* mediante la cual se denegó la solicitud de sentencia sumaria instada por la parte apelante. Los hechos determinados fueron los siguientes ocho (8):

1. Inmobiliaria es dueña del inmueble comercial sito en el 263 de la calle San Femando en el Municipio Autónomo de Carolina el cual consta de 3 espacios comerciales identificados como locales 4, 5 y 6. Hecho aceptado por la parte demandada en su

---

[25] SUMAC TA, a la Entrada Núm. 1, Apéndice 2, págs. 3-4. Surge de los autos que la prueba admitida fue la siguiente: Exhibit 1: Escritura Núm. 28 sobre compraventa, otorgada el 26 de septiembre de 2007; Exhibit 2: Escritura Núm. 29 sobre compraventa, otorgada el 26 de septiembre de 2007; Exhibit 3: Contrato de arrendamiento otorgado por las partes, el 6 de junio de 2009 (locales 1 y 2); Exhibit 4: Contrato de arrendamiento otorgado por las partes, el 6 de junio de 2009 (locales 5 y 6); Exhibit 5: Carta del 14 de enero de 2010 (cobro canon de arrendamiento correspondiente a diciembre de 2009); Exhibit 6: Carta de 25 de enero de 2010 (cobro cánones de arrendamiento correspondientes a diciembre de 2009 y enero de 2010); Exhibit 7: Contrato de arrendamiento otorgado por las partes, el 1 de agosto de 2011 (locales 4, 5 y 6); Exhibit 8: Permiso de uso emitido el 6 de junio de 2013; Exhibit 9: Carta de 18 de julio de 2012; Exhibit 10: Memorando de 29 de octubre de 2012, sobre trabajos realizados en el techo; Exhibit 11: Diez (10) fotografías ilustrativas de los trabajos de reparación realizados en el techo de los locales; Exhibit 12: Factura del 31 de octubre de 2012 por $2,690.00 dólares; Exhibit 13: Carta de 29 de noviembre de 2013; Exhibit 14: Informe del 28 de febrero de 2014, sobre evaluación de funcionamiento en los establecimientos para niños; Exhibit 15: Correo electrónico de 15 de abril de 2014; Exhibit 16: Correo electrónico de 5 de mayo de 2014; Exhibit 17: Memorando sobre quejas de 5 de agosto de 2014; Exhibit 18: Carta de 25 de agosto de 2014; Exhibit 19: Carta de 13 de agosto de 2014; Exhibit 20: Respuesta de 13 de agosto de 2014; Exhibit 21: Carta de 25 de agosto de 2014; Exhibit 22: Factura de 16 de octubre de 2014; Exhibit 23: Cargos por atrasos, penalidades y cheques devueltos por fondos insuficientes; Exhibit 24: Correo electrónico de 8 de mayo de 2014; Exhibit 25: Contrato de arrendamiento con Bright Star Bilingual School, LLC.; Exhibit 26: Cartas y correspondencia; Exhibit 27: Comunicados sobre gestiones de los demandados para desalojar los inmuebles; Exhibit 28: Publicidad del nuevo local de la parte demandada; Exhibit 29: Permiso de uso del inmueble de 6 de junio de 2013.

[26] SUMAC TA, a la Entrada Núm. 1, Apéndice 2, págs. 4-5. Surge de los autos que la prueba admitida fue la siguiente: Exhibit A: Carta enviada por Pedro Gómez Zaiter al Ingeniero Iván Ayuso Expósito (Ing. Ayuso Expósito), el 13 de julio de 2009; Exhibit B: Carta enviada por Erick Cintrón al Ing. Ayuso Expósito, el 13 de julio de 2009; Exhibit C: Moción de reconsideración en el caso 09-01208-U del Departamento de Permisos Urbanísticos del Municipio Autónomo de Carolina; Exhibit D: Permiso de uso condicionado, emitido el 12 de marzo de 2010; Exhibit E: Evaluación funcionamiento establecimiento para niños, efectuada por el Departamento de la Familia; Exhibit G: Carta de 5 de mayo de 2014.

[27] SUMAC TA, a la Entrada Núm. 1, Apéndice 2.

oposición a la solicitud de sentencia sumaria. Véanse Exhibits 1 y 2.

2. El 6 de junio de 2009[,] Inmobiliaria y la parte demandada otorgaron un contrato mediante el cual la segunda arrendó de la primera los locales 5 y 6 del inmueble descrito. Hecho aceptado por la parte demandada en su oposición a la solicitud de sentencia sumaria. Véase Exhibit 4.

3. El 1 de agosto de 2011[,] las partes enmendaron el contrato de arrendamiento para, entre otras cosas, añadir el local 4 a los espacios arrendados por la demandada. Hecho aceptado por la parte demandada en su oposición a la solicitud de sentencia sumaria. Véase el Exhibit 7.

4. La enmienda al contrato de 1 de agosto de 2011, entre otras cosas, especificó que la propiedad arrendada sería dedicada a un centro de cuido, educación pre-escolar y estudios supervisados. Hecho aceptado por la parte demandada en su oposición a la solicitud de sentencia sumaria.

5. La enmienda al contrato dispuso, entre otras cosas, que el arrendamiento se extendería hasta el 31 de julio de 2017 y que el canon de arrendamiento mensual sería de $2,800[,] el cual se pagaría por adelantado no más tarde del quinto día de cada mes. Las partes también acordaron incluir una cláusula de aumento escalonado en dicho canon de 3% anual comenzando en agosto de 2012. Hecho aceptado por la parte demandada en su oposición a la solicitud de sentencia sumaria.

6. La parte demandada adeuda a Inmobiliaria $3,982.50 por concepto de penalidades y recargos. Hecho aceptado por la parte demandada en su oposición a la solicitud de sentencia sumaria. Véase el Exhibit 22.

7. La parte demandada adeuda a Inmobiliaria lo correspondiente al aumento escalonado en el canon de arrendamiento. Hecho aceptado por la parte demandada en su oposición a la solicitud de sentencia sumaria.

8. La parte demandante tomó medidas para mitigar los daños que sufrió a partir de la fecha en que la demandada desalojó los locales arrendados.[28]

Por otro lado, producto del juicio en su fondo, y según reza la *Sentencia* apelada, el foro *a quo* emitió las siguientes determinaciones de hechos:

9. El 6 de junio de 2009[,] Inmobiliaria y la parte demandada otorgaron un contrato mediante el cual la segunda arrendó de la primera los locales 1 y 2 del inmueble descrito. Hecho aceptado por la parte demandada en su oposición a la solicitud de sentencia sumaria. Véase Exhibit 3.

10. Todos los contratos de arrendamiento que las partes otorgaron el 6 de junio de 2009 tenían un término de 8 años. Véanse [l]os Exhibits 3 y 4.

11. El canon mensual de arrendamiento para los locales 1 y 2 era $2,000. Véase Exhibit 3.

12. El canon mensual de arrendamiento para los locales 5 y 6 era $2,000. Véase Exbibit 4.

13. Los cánones de arrendamiento debían efectuarse no más tarde del 5 día de cada mes. Los contratos otorgados el 6 de junio de 2009 contenían una cláusula penal por pago tardío equivalente al 10% de la mensualidad vencida. De acuerdo con estos, el canon de arrendamiento aumentaba automáticamente un 5% el 1 de agosto de cada año. Véanse las cláusulas 3 en ambos contratos, [l]os Exhibits 3 y 4.

14. La parte demandada se obligó a pagar los cánones de arrendamiento, aunque no ocupara los espacios comerciales. Véanse las cláusulas 7 en ambos contratos, [l]os Exhibits 3 y 4.

---

[28] SUMAC TA, a la Entrada Núm. 1, Apéndice 2, págs. 5-6.

15. Las partes acordaron que la demandada no realizaría cambios ni mejoras a los locales a menos que obtuviera el consentimiento previo por escrito de la parte demandante. También pactaron que las mejoras que realizara la parte demandada permanecerían en la propiedad en beneficio de la parte demandante. Véanse las cláusulas 13 y en ambos contratos, [l]os Exhibits 3 y 4.

16. De acuerdo con las cláusulas l6 en ambos contratos, la demandada tenía la obligación de informarle diligentemente a la parte demandante cualquier avería o condición de peligrosidad en los espacios arrendados que afectaran a la demandada, a sus invitados o a terceros. Véanse [l]os Exhibits 3 y 4.

17. La cláusula 19 en ambos contratos disponían que el incumplimiento de cualquiera de los contratos constituía causa suficiente para resolver el contrato. Véanse los [l]os Exhibits 3 y 4.

18. El 13 de julio de 2009[,] Pedro Gómez Zaiter envió una carta al ingeniero Iván Ayuso Expósito, director del Departamento de Permisos Urbanísticos del Municipio Autónomo de Carolina, comprometiéndose a presentar todos los documentos necesarios para legalizar unos trabajos de remodelación realizados en el inmueble sito en la calle San Fernando 262 en la extensión de la urbanización El Comandante. Véase el Exhibit A.

19. El 13 de julio de 2009[,] el codemandado Erick Cintrón Medero envió una carta al ingeniero Iván Ayuso Expósito, director del Departamento de Permisos Urbanísticos del Municipio Autónomo de Carolina, solicitándole una carta de "no objeción" para solicitar la conexión de la energía eléctrica y obtener los permisos correspondientes del Departamento de la Familia. Véase Exhibit B.

20. El 14 de enero de 2010[,] la demandante envió una carta a la demandada reclamándole el cobro de $4,400 por los cánones vencidos correspondiente a diciembre de 2009 y enero de 2010, Véase el Exhibit 5.

21. El 25 de enero de 2010[,] la parte demandante reiteró a la demandada su solicitud para que pagara los «cánones de arrendamiento correspondientes a diciembre de 2009 y enero de 2010. Véase el Exhibit 6.

22. El 12 de marzo de 2010[,] la parte demandada obtuvo un permiso de uso condicionado para operar un comercio dedicado al cuidado de niños. El Municipio Autónomo de Carolina condicionó dicho permiso a legalización de la estructura en un plazo de 12 meses. Véase el Exhibit D.

23. El 6 de junio de 2013, cuatro años después de otorgados los contratos, el Departamento de Permisos Urbanísticos del Municipio Autónomo de Carolina emitió el permiso de uso 13787 a la demandada para que utilizara el inmueble objeto de los contratos de arrendamiento como un centro para el cuido de niños y oficinas. Véase el Exhibit 8.

24. En un momento no determinado próximo a julio de 2012, la demandada instaló en el techo del inmueble varias unidades de acondicionadores de aire sin el consentimiento previo por escrito de la parte demandante, La instalación de dichos equipos fue defectuosa y provocó filtraciones de agua en el inmueble. Véase el Exhibit 9.

25. El demandante, mediante un correo electrónico enviado a la demandada el 18 de julio de 2012, indicó que no era responsable de reparar dichas filtraciones porque fueron provocadas por la propia negligencia de la demandada. Véase el Exhibit 9.

26. La demandada informó oportunamente al demandante dichas filtraciones, un área de losetas que se habían despegado del suelo, problemas con la electricidad. El demandante negó responsabilidad inicial sobre la situación. Véase el Exhibit 9.

27. Para el 18 de julio de 2012[,] la demandada solo adeudaba el canon correspondiente a dicho mes. Véase el Exhibit 9.

28. Las partes confrontaron problemas para coordinar la reparación de las losetas despegadas y del problema eléctrico.

29. La demandante realizó trabajos para corregir o reparar las filtraciones en el techo. Véanse los Exhibits 10, 11 y 12.

30. El 29 de noviembre de 2013[,] la demandante envió a la demandada una carta por correo electrónico notificándole que la reparación del problema eléctrico correspondía a la demandada. Véase el Exhibit 13.

31. El 28 de febrero de 2014[,] la Oficina de licenciamiento del Departamento de la Familia renovó a la demandada la licencia para operar un centro de cuido de niños. En dicho informe, el Departamento de la Familia concluyó que el establecimiento Castillo de Arena "está preparado para continuar ofreciendo los servicios de cuidado diurno a los niños allí presentes. El establecimiento cumple con todos los requisitos según lo establece la Ley 3 de 1955 y el Reglamento 4758." Véase el Exhibit 14.

32. El 15 de abril de 2014[,] la demandante envió a la demandada por correo electrónico una carta reclamándole el pago del canon correspondiente a abril de ese año. Véase el Exhibit 15.

33. El 5 de mayo de 2014[,] la demandante envió a la demandada por correo electrónico una carta reclamándole el pago del canon correspondiente a mayo de ese año. En esa carta, el demandante hace referencia a un tubo roto y solicita coordinar la inspección de este. La carta no menciona si la reparación del tubo era una ordinaria o extraordinaria. Véase el Exhibit 16.

34. El 5 de agosto de 2014[,] la demandada informó por escrito a la demandante que ese mes desalojaría el inmueble arrendado. La demanda[da] expuso que entregaría el local porque este no aprobó la inspección que le realizó la agencia reglamentadora. Atribuyó la inspección deficiente a la situación de las losetas despegadas en el local 4, al problema con la electricidad y con las tuberías en algunas áreas y a las filtraciones de agua. Véase el Exhibit 17.

35. El 13 de agosto de 2014[,] la demandante envió a la demandada una carta por correo electrónico en la cual le indicó que las razones aducidas por ella para entregar el inmueble no justificaban la resolución de los contratos de arrendamiento. Le reprochó[,] además[,] varios asuntos, entre ellos, que los actos negligentes de la demandada ocasionaron las filtraciones en el techo del inmueble, su falta de disposición para coordinar la reparación de las losas despegadas del suelo y su reiterada costumbre de pagar tardíamente los cánones de arrendamiento. También le recordó a la demandada el valor del contrato hasta su vencimiento en julio de 2017. Por último, la exhortó a resolver las controversias extrajudicialmente. Véanse los Exhibits 19 y 20.

36. El 25 de agosto de 2014[,] la demandante replicó a la demandada su notificación de que desalojaría el inmueble recordándole que su obligación contractual vencía el 31 de julio de 2017. Véanse los Exhibits 18 y 21.

37. El 31 de marzo de 2017[,] la demandante arrendó los locales 5 y 6 del inmueble por $1,400 mensuales a Bright Start Bilingual Preschool, L.L.C. para operar un centro para el cuido de niños. La vigencia del contrato era por dos años. Véase el Exhibit 25.[29]

En el dictamen apelado, el foro primario concluyó que la parte apelada incumplió con su obligación contractual al no pagar los cánones de arrendamiento en los plazos fijados y al hacer mejoras al inmueble sin el consentimiento de la parte apelante. No obstante, determinó que el problema de filtración de agua era uno de naturaleza estructural que

---

[29] SUMAC TA, a la Entrada Núm. 1, Apéndice 2, págs. 6-10.

correspondía atender y resolver a la parte apelante a pesar de que dicha situación fue causada por la conducta imprudente de la parte apelada. Dispuso que la parte apelante tenía la obligación de mantener los espacios arrendados en condiciones que permitieran a la parte apelada disfrutarlos plena y adecuadamente, así como realizar las reparaciones estructurales en un tiempo razonable. Así, pues, determinó que Inmobiliaria no actuó con la prontitud requerida. En consecuencia, coligió que ambas partes incurrieron en incumplimiento de contrato, por lo que cada una estaba impedida de exigirle a la otra su contraprestación. A tenor, dictaminó lo siguiente:

> Conforme con lo anterior, el tribunal declara parcialmente *Ha Lugar* la demanda de epígrafe, solo en cuanto al cobro de dinero que la parte demandada reconoció adeudar en su réplica a la solicitud de sentencia sumaria, en consecuencia, condena a la parte demandada-reconviniente a pagarle a la demandante-reconvenida $3,982.50 por concepto de penalidades y recargos más el correspondiente aumento escalonado en los cánones de arrendamiento pactados. Se declara *No Ha Lugar* las demás causas de acción que se instaron en la demanda. Por otra parte, declaramos *No Ha Lugar* la reconvención que instaron los demandados y la desestimamos con perjuicio.[30]

Insatisfecha con lo resuelto, el 23 de mayo de 2025, Inmobiliaria interpuso una *Solicitud de determinación de hechos adicionales, conclusiones de derecho y reconsideración*.[31] Adujo que las determinaciones de hechos adicionales propuestas justificaban la enmienda y reconsideración de la *Sentencia*. A tenor, solicitó que se reconsiderara la *Sentencia*, se declarara *Ha Lugar* la *Demanda,* y se condenara a la parte apelada al pago de la renta adeudada.

En reacción, el 25 de agosto de 2025, la parte apelada presentó su *Oposición a solicitud de determinaciones de hechos adicionales, conclusiones de derecho y reconsideración*.[32] Expuso que, de las quince (15) determinaciones de hechos propuestas por la parte apelante, trece (13) ya se encontraban contenidas en la *Sentencia*. Asimismo, indicó que

---

[30] SUMAC TA, a la Entrada Núm. 1, Apéndice 2, pág. 17.

[31] *Íd.*, Apéndice 3, Anejo 54.

[32] Véase autos originales del TPI; Véase, además, SUMAC TA, a la Entrada Núm. 1, Apéndice 3, Anejo 55. Conviene mencionar que, a dicho escrito, la parte apelada le anejó la transcripción de la prueba oral (TPO) desfilada durante el juicio en su fondo, celebrado en el caso del título, la cual, conforme a lo informado por la parte apelante, mediante escrito presentado el 1 de octubre de 2025, utilizaría como mecanismo de reproducción de la prueba oral en el recurso ante nos. Véase SUMAC TA, a la Entrada Núm. 4.

las demás determinaciones de hechos no procedían debido a que la parte apelante no podía intervenir con la apreciación de la prueba del foro primario. A tenor, solicitó que se declarara *No Ha Lugar* la solicitud de determinación de hechos adicionales, conclusiones de derecho y reconsideración.

En respuesta, mediante *Resolución*, emitida el 26 de agosto de 2025, y notificada el día 28, del mismo mes y año, el tribunal *a quo* declaró *No Ha Lugar* lo solicitado por Inmobiliaria.[33]

En desacuerdo, el 29 de septiembre de 2025, Inmobiliaria compareció ante nos mediante un recurso de apelación en el cual esbozó la comisión de los siguientes cinco (5) errores:

> **PRIMER ERROR: ERRÓ EL TPI EN LA APRECIACIÓN DE LA PRUEBA Y CONCLUSIONES DE HECHO LO QUE CAUSA QUE LA SENTENCIA NO PRESENTE EL BALANCE MÁS RACIONAL, JUSTICIERO Y JURÍDICO.**
>
> **SEGUNDO ERROR: ERRÓ INSTANCIA PORQUE LA SENTENCIA PARCIAL NO REFLEJA EL BALANCE MÁS RACIONAL, JUSTICIERO Y JURÍDICO REQUERIDO LUEGO DE PONDERAR LA PRUEBA RECIBIDA.**
>
> **TERCER ERROR: ERRÓ INSTANCIA PORQUE VARIAS DE LAS DETERMINACIONES DE HECHOS SIGNIFICATIVAS DE LA SENTENCIA PARCIAL NO CONCUERDAN O SE RIÑEN ENTRE SÍ O CON LA PRUEBA.**
>
> **CUARTO ERROR: ERRÓ EL TPI AL APLICAR EL DERECHO Y PARTICULARMENTE LA DOCTRINA SOBRE INCUMPLIMIENTO.**
>
> **QUINTO ERROR: ERRÓ EL TPI AL EQUIPARAR SUPUESTOS INCUMPLIMIENTOS REMOTOS Y CURADOS PARA LA FECHA EN QUE LA DEMANDADA APELADA ABANDONÓ EL LOCAL ARRENDADO UNILATERALMENTE.**[34]

Mediante *Resolución*, emitida el 30 de septiembre de 2025, concedimos a Inmobiliaria hasta el 2 de octubre de 2025, para presentar cierto documento indispensable para que esta Curia pudiese constatar que contaba con jurisdicción para intervenir en este caso. Por otro lado, dado a que en el recurso se cuestionó la apreciación de la prueba, pero, a su vez, observamos que en los autos obraba una transcripción de la prueba oral del juicio en su fondo, ordenamos a Inmobiliaria a informarnos si se utilizaría como método de reproducción de la prueba oral. Empero, de

---

[33] SUMAC TA, a la Entrada Núm. 4, Anejo 56.
[34] Énfasis en el original.

utilizarse, dado a que fue presentada por la parte apelada ante el foro de instancia, como parte de nuestra orden, se le concedió término para estipular o presentar sus objeciones a la misma, así como para que informara si se estaría presentado un alegato suplementario. Además, ordenamos al foro de instancia a remitirnos la grabación del juicio en su fondo, la cual fue remitida.

El 1 de octubre de 2025, compareció Inmobiliaria mediante *Moción en cumplimiento de resolución*. Adjuntó a su escrito el documento requerido por esta Curia, así como que informó que se proponía a utilizar la TPO que surgía de los autos ante el foro primario, así como que se proponía a presentar un alegato suplementario. En respuesta, y en esa misma fecha, emitimos una *Resolución*, mediante la cual dimos por cumplida nuestras órdenes a la parte apelante y concedimos hasta el 31 de octubre de 2025, para presentar el alegato suplementario. Por otro lado, mediante *Resolución*, emitida el 2 de octubre de 2025, le requerimos al foro de instancia que nos remitiera los autos originales del presente caso, los cuales fueron recibidos.

El 3 de noviembre de 2025, compareció la parte apelante para presentar su *Alegato Suplementario.* Por otro lado, el 2 de diciembre de 2025, compareció la parte apelada mediante su *Alegato en oposición a apelación* Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

II

### A. El Incumplimiento Contractual

Bajo nuestro crisol doctrinario, "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia".[35] Respecto a las obligaciones contractuales, estas tienen fuerza de ley entre las partes y

---

[35] Artículo 1042 del Código Civil de Puerto Rico, Edición de 1930 (Código Civil de 1930), 31 LPRA sec. 2992. El referido código fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.

deben cumplirse según lo pactado.[36] Ello, toda vez que, en nuestro ordenamiento jurídico, rige el principio de libertad de contratación.[37] De manera que, los contratantes tienen la facultad de establecer los pactos, condiciones y cláusulas que le sean más convenientes, siempre y cuando no sean contrarios a la ley, a la moral y al orden público.[38]

Es preciso destacar que el contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras a dar alguna cosa o prestar algún servicio.[39] En otras palabras, para que se considere que existe un contrato se requiere que concurran tres (3) requisitos: (i) consentimiento de los contratantes; (ii) un objeto cierto que sea materia del contrato, y (iii) la causa de la obligación que se establezca.[40] Una vez perfeccionado un contrato, las partes que lo suscriben están sujetas a hacer valer el cumplimiento de lo pactado y a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley.[41] Entiéndase, que el principio de la obligatoriedad de los contratos está estrechamente vinculado con la buena fe de los contratantes.[42] Sobre tal aspecto, nuestro Tribunal Supremo ha indicado que:

> Se considera como un principio que debe regir en toda sociedad civilizada la idea de que los hombres deben poder contar con que aquellos con quienes tratan en el intercambio social actuarán de buena fe y por tanto llevarán a cabo las expectativas razonables que sus promesas o su conducta hayan creado razonablemente en los demás. La obligatoriedad del contrato se funda, pues, de acuerdo con esta idea en una norma ética derivada de la buena fe, que exige no defraudar la confianza que en otro pueda haber creado nuestra promesa o nuestra conducta.[43]

Es por lo anterior que, desde el momento en que las partes perfeccionan con el mero consentimiento un contrato, cada una viene obligada no solo a cumplir con lo expresamente pactado, sino también con las consecuencias que, según su naturaleza, sean conformes a la buena

---

[36] Artículo 1044 del Código Civil de 1930, *supra*, 31 LPRA sec. 2994 (derogado).
[37] *Oriental Financial v. Nieves*, 172 DPR 462, 470 (2007).
[38] Artículo 1207 del Código Civil de 1930, *supra*, 31 LPRA sec. 3372 (derogado); *Blanco Matos v. Colón Mulero*, 200 DPR 398, 408 (2018).
[39] Artículo 1206 del Código Civil de 1930, *supra*, 31 LPRA sec. 3371 (derogado).
[40] Artículo 1213 del Código Civil de 1930, *supra*, 31 LPRA sec. 3391 (derogado).
[41] *Íd.*, Artículo 1210, 31 LPRA sec. 3375 (derogado).
[42] *Unysis v. Ramallo Brothers*, 128 DPR 842, 852 (1991).
[43] *Íd.,* a la pág. 852, citando a Díez-Picazo, Fundamentos de Derecho Civil Patrimonial, 2da ed., Madrid, Ed. Tecnos, 1983, Vol. I, Cap. IV, a la pág. 99. (Cita depurada).

fe, al uso y a la ley.[44] Por consiguiente, la validez y el cumplimiento de los contratos no puede dejarse al arbitrio de una de las partes.[45]

Como corolario de lo antes expuesto, el Código Civil de 1930, hoy derogado, dispone en su Artículo 1233 que "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas".[46] Asimismo, establece que "[s]i las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquellas".[47] En ese aspecto, cuando los términos de un contrato, sus condiciones y exclusiones, son claros y específicos, no dando margen a ambigüedades u otras interpretaciones, así deben aplicarse.[48] En adición, los tribunales se deben limitar a interpretar los contratos en los casos en los que esto sea estrictamente necesario.[49] Así, pues, si un contrato es claro, presupone concordar la letra contractual con la intención de las partes.[50]

Cónsono con lo anterior, es harto conocido que, en nuestra jurisdicción, impera la teoría de la subjetividad en la interpretación de los contratos, la cual implica el indagar cual fue la voluntad real de las partes, con el propósito de que esta prevalezca.[51] La intención de las partes será el criterio fundamental para fijar el alcance de las obligaciones contractuales.[52] Al momento de analizar la intención de los contratantes, los tribunales deben atender no solo los actos anteriores, coetáneos y posteriores al contrato, sino también las circunstancias indicativas de la voluntad de las partes.[53] En consideración a lo anterior, al examinar la intención contractual, resulta importante considerar quiénes son las partes, sus experiencias particulares y conocimientos especializados sobre la

---

[44] Artículo 1210 del Código Civil de 1930, *supra*, 31 LPRA sec. 3375 (derogado); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.

[45] Artículo 1208 del Código Civil de 1930, *supra*, 31 LPRA sec. 3373 (derogado); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.

[46] Artículo 1233 del Código Civil de 1930, *supra*, 31 LPRA sec. 3471 (derogado).

[47] *Íd.*

[48] *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006); *Unysis v. Ramallo Brothers*, supra, a la pág. 852.

[49] *Macial Burgos v. Tomé*, 144 DPR 522, 537 (1997).

[50] *Íd.*

[51] *Íd.*, a la pág. 537.

[52] *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 DPR 64, 69 (1983).

[53] Artículo 1234 del Código Civil de 1930, *supra*, 31 LPRA sec. 3472 (derogado); *Blas v. Hosp. Guadalupe*, 167 DPR 439, 451 (2006).

materia sobre la cual versa el contrato.[54] La interpretación final debe ser cónsona con el principio de la buena fe y no llevar a resultados incorrectos, absurdos e injustos para las partes.[55]

Por otra parte, es menester apuntalar que, si se quebrantan las obligaciones pactadas mediante un contrato, la parte afectada podrá incoar una acción por incumplimiento contractual.[56] Mediante esta acción *ex contractu,* se podrá solicitar el resarcimiento de los daños que emanen del quebrantamiento de los deberes convenidos.[57] Empero, para que proceda esta acción, debe existir un pacto el cual haya generado tanto una obligación, así como una expectativa en virtud de la cual actuaron las partes.[58] Además, será necesario que la parte afectada demuestre la existencia de un nexo causal entre el incumplimiento contractual y el daño reclamado.[59] Ahora bien, la acción por incumplimiento contractual debe presentarse antes de que expire el término prescriptivo de quince (15) años.[60] De lo contrario, la parte afectada por el incumplimiento contractual estará impedida de solicitar el resarcimiento de los daños.

En lo pertinente al caso de marras, es menester resaltar que el Artículo 1077 del hoy derogado Código Civil de 1930 expresa que "la facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe".[61] Sobre esta disposición estatutaria, nuestro Tribunal Supremo ha indicado que la misma establece una condición resolutoria tácita en todo contrato bilateral que opere *ex propio vigore*.[62] De manera que, si una de las partes en un contrato incumple, la otra puede darlo por resuelto sin necesidad de la intervención del tribunal.[63] Ello, puesto a que se ha entendido que la resolución se justifica cuando una de las partes se enfrenta a un

---

[54] *Unysis v. Ramallo Brothers*, supra, a la pág. 853.
[55] *Guadalupe Solis v. González Durieux*, 172 DPR 676, 684-685 (2007).
[56] *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 998 (2024).
[57] *Soc. de Gananciales v. Vélez & Asoc*, 145 DPR 508, 521 (1998).
[58] *Álvarez v. Rivera*, 165 DPR 1, 18 (2005).
[59] *Cruz Cruz v. Casa Bella Corp.*, supra, a la pág. 999.
[60] *Ramos Lozada v. Orientalist Rattan Furniture Inc*, 130 DPR 712, 722 (1992).
[61] Artículo 1077 del Código Civil de 1930, *supra*, 31 LPRA sec. 3052 (derogado).
[62] *Constructora Bauzá, Inc. v. García López*, 129 DPR 579, 595 (1991).
[63] *Constructora Bauzá, Inc. v. García López*, supra, a la pág. 595.

incumplimiento parcial o defectuoso, ya que ninguna de la partes puede pedir que se cumpla la obligación contraria cuando ni siquiera ha cumplido u ofrecido su obligación propia.[64] Entiéndase que, "si el que incurre en incumplimiento exige la satisfacción de la prestación debida, la otra parte puede oponer la defensa del contrato incumplido".[65] Esta defensa se conoce como *exceptio non rite adimpleti contractus*.[66] La misma está disponible al demandado cuando el demandante exige que se cumpla con una obligación, pese a que ha cumplido parcial o defectuosamente con su obligación.[67]

Ahora bien, habrá que tener en cuenta que, en algunas situaciones, la buena fe en la contratación puede imponer algunas limitaciones a esta facultad resolutoria.[68] Esto, por el ejemplo puede ser el caso de cuando el incumplimiento parcial o defectuoso se debe a la conducta del demandado o cuando el demandado admite la contraprestación sin reserva ni protesta alguna, aun cuando pudo comprobar los defectos, ya que iría contra sus propios actos.[69]

### B. Los Contratos de Arrendamiento

En lo que respecta a los contratos de arrendamiento, éstos pueden ser de cosas, obras o servicios.[70] Particularmente, cuando se pacta un contrato de arrendamiento de una cosa, una de las partes se obliga a dar a la otra el goce o uso de esta por tiempo determinado y precio cierto.[71] Dentro de las obligaciones del arrendador, se encuentra el que, durante el arrendamiento, debe hacer todas las reparaciones necesarias a los fines de conservar la cosa en estado de servir para el uso al cual ha sido destinada.[72] De otra parte, el arrendatario está obligado a, entre otras cosas, pagar el precio del arrendamiento en los términos convenidos, así como a usar la cosa arrendada como un diligente padre de familia,

---

[64] *Álvarez v. Rivera*, supra, a la pág. 20.
[65] *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 742 (1987).
[66] *Álvarez v. Rivera*, supra, a la pág. 21.
[67] *Íd.*, a las págs. 21-22.
[68] *Íd.*, a la pág. 19.
[69] *Íd.*, a la pág. 22.
[70] *Íd.*, Artículo 1432, 31 LPRA sec. 4011 (derogado).
[71] *Íd.*, Artículo 1433, 31 LPRA sec. 4012 (derogado).
[72] Artículo 1444 (2) del Código Civil de 1930, *supra*, 31 LPRA sec. 4051 (derogado).

destinándola al uso pactado.[73] El hoy derogado Código Civil de 1930 faculta, tanto al arrendador como al arrendatario, a pedir la recisión del contrato o la indemnización de daños y perjuicios, si cualquiera de las partes incumple con las obligaciones antes expresadas.[74]

Finalmente, precisa resaltar el arrendatario también estará obligado a poner en aviso al dueño con carácter de urgencia sobre la necesidad de toda reparación necesaria para conservar la cosa en estado de servir para el uso que ha sido destinada. De lo contrario, el arrendatario será responsable de los daños y perjuicios que por su negligencia se le ocasionen al propietario.[75]

### C. Apreciación de la Prueba y Deferencia Judicial

Como es sabido, tanto el ejercicio discrecional que efectúa el Tribunal de Primera Instancia de apreciación de la prueba como las determinaciones de hecho que esgrime están revestidas de confiabilidad y merecen gran deferencia.[76] Ello, toda vez que es el foro primario quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[77] Esto, al contrario del Tribunal de Apelaciones, quien cuenta únicamente con "récords mudos e inexpresivos.[78] Así, pues, en nuestro sistema de justicia, la discreción judicial permea la evaluación de la prueba presentada en los casos y controversias.[79]

Por lo anterior, conviene mencionar que las decisiones discrecionales que toma el foro primario no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[80] Un tribunal de justicia incurre en un abuso de discreción cuando el juez, sin fundamento para ello: (i) no toma en cuenta e ignora en la decisión que emite un hecho

---

[73] Artículo 1445 (1) y (2) del Código Civil de 1930, *supra,* 31 LPRA sec. 4052 (derogado).
[74] *Íd.,* Artículo 1446, 31 LPRA sec. 4053 (derogado).
[75] *Íd.,* Artículo 1449, 31 LPRA sec. 4056 (derogado).
[76] *Trinidad v. Chade*, 153 DPR 280, 291 (2001), citando a *Pueblo v. Torres Rivera*, 137 DPR 630 (1994).
[77] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).
[78] *S.L.G. Rivera Carrasquillo v. A.A.A*, 177 DPR 345, 356 (2009); *Trinidad v. Chade*, supra, a la pág. 291.
[79] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011).
[80] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).

material importante que no podía ser pasado por alto; (ii) concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o (iii) no toma en cuenta todos los hechos materiales e importantes, descarta los relevantes, así como los sopesa y calibra livianamente.[81]

Como corolario de lo anterior, nuestro Tribunal Supremo ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[82] Se ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala, e incluso antes de que se someta prueba alguna.[83] Con relación al error manifiesto, un juzgador incurre en este cuando, de un análisis de la totalidad de la evidencia, este Tribunal de Apelaciones queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[84] Igualmente, se podrá intervenir con la determinación del tribunal de instancia cuando la valoración de la prueba se aparte de la realidad fáctica o resulte inherentemente imposible o increíble.[85]

No obstante, lo anterior, cabe destacar que, el Alto Foro ha resuelto que, en instancias en las cuales las determinaciones de hecho que realice el foro primario estén basadas en prueba pericial o documental, el tribunal revisor estará en la misma posición para revisar la prueba.[86] Por tanto, en dichas instancias, este tribunal apelativo "tendrá la facultad para adoptar su

---

[81] *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).

[82] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994); *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

[83] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).

[84] *Dávila Nieves v. Meléndez Marín,* supra, a la pág. 772.

[85] *Santiago Ortiz v. Real Legacy et al.*, supra*,* a la pág. 219; *González Hernández v. González Hernández*, supra, a la pág. 777.

[86] *Santiago Ortiz v. Real Legacy et al.*, supra*,* a la pág. 219.

propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta".[87]

Huelga señalar que aunque, según vimos, la apreciación de la prueba no está exenta de toda revisión, si la actuación del tribunal de instancia no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio de este foro, que es a quien corresponde la dirección del proceso.[88] Por ende, los foros apelativos solo podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que de esta surjan serias dudas, razonables y fundadas. Ahora bien, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo.[89]

III

En el presente recurso, la parte apelante nos solicita que revisemos una *Sentencia* mediante la cual el foro de instancia declaró *Ha Lugar*, parcialmente, la demanda instada por esta, específicamente, en cuanto a la acción sobre cobro de dinero. Asimismo, mediante el referido dictamen, el tribunal *a quo* denegó conceder el remedio solicitado en torno al resto de las causas de acciones interpuestas en la demanda, así como la reconvención incoada por la parte apelada, la cual fue desestimada. A los fines de que revisemos la referida sentencia, la parte apelante alzó cinco (5) errores, de los cuales algunos de ellos se encuentran estrechamente relacionados. Por tanto, el *primer*, *segundo* y *tercer* error se discutirán en conjunto. Igualmente, se discutirá conjuntamente el *cuarto* y *quinto* error.

Antes de pasar a discutir los referidos errores, conviene destacar que, según relatamos previamente, el caso del título inició cuando la parte aquí apelante presentó una demanda en contra de la parte apelada sobre cobro de dinero, específicamente, por la falta de pago de ciertos cánones de arrendamiento. Posteriormente, la parte apelante enmendó la referida

---

[87] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219*; Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 363 (2001); *Prieto v. Mary land Casualty Co.*, 98 DPR 594, 623 (1970).
[88] S*ierra v. Tribunal Superior*, supra, a la pág. 572.
[89] *Rivera Pérez v. Cruz Corchado*, supra, a la pág. 14.

demanda, a lo únicos fines de incluir como demandado al cónyuge de la demandada. No obstante, lo anterior, mantuvo las mismas alegaciones y solicitó los mismos remedios que en la demanda original.

En respuesta, la parte apelada presentó su *Contestación a la demanda enmendada*, en la cual incluyó una reconvención. En esta última, alegó que el contrato de arrendamiento suscrito por las partes disponía que la propiedad arrendada sería destinada al establecimiento de un centro de cuido, educación preescolar y estudios supervisados. Sin embargo, por razón de unos desperfectos estructurales, las agencias pertinentes prohibieron el uso del local para el cuido de menores, razón por la cual se vio en la obligación de entregar la propiedad a la parte apelante. En consideración a lo anterior, peticionó que se condenara a la parte apelante al pago de una cantidad por lucro cesante y angustias mentales, así como al pago de las costas, gastos y honorarios de abogado.

En reacción, la parte apelante contestó la reconvención. En su escrito, arguyó, entre otras cosas, que los fallos estructurales fueron causados por la propia parte apelada quien rompió el techo de la estructura para instalar unos aires acondicionados.

Tras varias instancias procesales, la cuales incluyeron, pero no se limitaron, a la presentación de una solicitud de sentencia sumaria, la cual fue denegada por el foro primario, y la celebración del juicio en su fondo, el tribunal *a quo* emitió el dictamen objeto de revisión. En este, concluyó, en suma, que las partes incumplieron con sus respectivas obligaciones contractuales por lo que cada una estaba impedida de exigirle a la otra la contra prestación. Así, pues, únicamente declaró la demanda parcialmente *Ha Lugar*, a los fines de condenar a la parte apelada a pagar cierta cantidad que admitió que adeudaba, en la réplica a la sentencia sumaria, así como los recargos, más el correspondiente aumento escalonado en los cánones de arrendamiento pactados.

Establecido lo anterior, procedemos a discutir la procedencia de los primeros tres (3) errores señalados. En esencia, la parte apelante plantea en estos señalamientos de error, que el foro primario erró en cuanto a la

apreciación de la prueba y determinaciones de hechos, por lo que la *Sentencia* no refleja el balance más racional, justiciero y jurídico. Además, aduce que varias de las determinaciones de hechos de la *Sentencia* no concuerdan o se riñen entre sí.

Según expusimos en nuestra exposición doctrinal previa, el ejercicio discrecional que efectúa el tribunal de instancia de apreciación de la prueba, así como de determinar hechos, está revestido de gran confiabilidad y merece deferencia por parte de este tribunal.[90] Esto, puesto a que es el foro primario el que tuvo la oportunidad de ver, escuchar y valorar los testigos, así como sus lenguajes no verbales.[91] Por tanto, no se debe sustituir el criterio del tribunal de instancia a menos que se demuestre que están presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[92] También se podrá variar lo dispuesto por el foro primario cuando la prueba se aparte de la realidad fáctica o resulte inherentemente imposible o creíble.[93] Establecido lo anterior, es de ver que si la actuación del tribunal de instancia no está desprovista de bases razonables, ni perjudica los derechos sustanciales de alguna de las partes, debe prevalecer el criterio de este foro.[94]

Tras haber examinado minuciosamente los autos ante nuestra consideración, así como las posiciones de las partes y la transcripción de la prueba oral, coincidimos que, en este caso, no se encuentra presente ninguna circunstancia que nos autorice a variar el criterio del tribunal *a quo*. Más aún cuando la parte apelante no nos colocó en posición de evaluar la prueba ni las determinaciones de hecho que, a su juicio, entiende que riñen entre sí.

---

[90] *Trinidad v. Chade*, supra, a la pág. 291.
[91] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219 (2021); *Meléndez Vega v. El Vocero de PR*, supra, a la pág. 142.
[92] *Coop. Seguros Múltiples de P.R. v. Lugo*, supra, a la pág. 208; *Rivera Pérez v. Cruz Corchado*, supra, a la pág. 14; *Sierra v. Tribunal Superior*, supra, a la pág. 572.
[93] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219; *González Hernández v. González Hernández*, supra, a la pág. 777.
[94] *Sierra v. Tribunal Superior*, supra, a la pág. 572.

Dicho lo anterior, pasemos a evaluar la procedencia de los últimos dos (2) señalamientos de error. En su *cuarto* señalamiento de error, la parte apelante arguye que el foro de instancia erró al aplicar el derecho, particularmente, la doctrina sobre incumplimiento de contrato. Finalmente, en su *quinto* error, la parte apelante esgrime que fue un error el equiparar supuestos incumplimientos remotos y curados para la fecha en que la parte apelada abandonó el local arrendado. En otras palabras, que los incumplimientos recíprocos señalados por el tribunal no podían equipararse. Asimismo, arguye en su escrito de apelación que la parte apelada debió haberle apercibido de la resolución del contrato de arrendamiento. No estamos de acuerdo.

Aunque es cierto que las obligaciones contractuales tienen fuerza de ley entre las partes y de ordinario deben cumplirse según lo pactado,[95] conforme expusimos previamente, en virtud del Artículo 1077 del derogado Código de 1930,[96] en nuestro ordenamiento jurídico existe una condición resolutoria tácita en todo contrato bilateral que opere *ex propio vigore*.[97] En consecuencia, si una de las partes en un contrato incumple la otra parte puede darlo por resuelto sin necesidad de acudir al tribunal.[98] Lo anterior, se concreta en la defensa conocida como *exceptio non rite adimpleti contractus*.[99] Según adelantamos, la misma está disponible al demandado cuando el demandante exige que se cumpla con una obligación, pese a que ha cumplido parcial o defectuosamente con su obligación.[100]

De la prueba admitida no existe duda en cuanto a que la parte apelada incumplió con el contrato de arrendamiento, ya que dejó de pagar su renta y hubo múltiples atrasos en cuanto al pago. Específicamente, esta abandonó el local sin culminar el contrato que se encontraba vigente. Según testificó el señor Pedro Gómez Zaiter, la parte apelada dejó de pagar el canon de arrendamiento desde mayo de 2014, hasta el 31 de julio de

---

[95] Artículo 1044 del Código Civil de 1930, *supra*.
[96] Artículo 1077 del Código Civil de 1930, *supra*.
[97] *Constructora Bauzá, Inc. v. García López*, supra, a la pág. 595.
[98] *Íd*.
[99] *Álvarez v. Rivera*, supra, a la pág. 21.
[100] *Íd.,* a las págs. 21-22.

2017.[101] Ello, aun cuando se obligó a pagar los cánones de arrendamiento, aunque no ocupara los espacios comerciales. Asimismo, las partes acordaron que la parte apelada no realizaría cambios ni mejoras a los locales, a menos que obtuviera el consentimiento previo por escrito de la parte demandante. También pactaron que las mejoras que realizara la parte apelada permanecerían en la propiedad en beneficio de la parte apelante. Sin embargo, según surge del expediente ante nos, la parte apelada incumplió con el contrato pactado al instalar en el techo del inmueble varias unidades de acondicionadores de aire.[102] Según surge del testimonio de la parte apelada, dichas unidades fueron instaladas sin el consentimiento previo de la parte apelante.[103] Además, la parte apelada retuvo las unidades en su beneficio ya que se las llevó una vez desalojó el edificio.[104] Por otra parte, cabe resaltar que la instalación de dichos equipos fue defectuosa y provocó filtraciones de agua en el inmueble. Según el testimonio del señor Delfos Ochoa Villavizanis, el inmueble, a pesar de las obras que se realizaron, siempre confrontará problemas de filtración de agua por la forma en que se instalaron las unidades de los acondicionadores de aire, particularmente en las áreas perforadas del techo por donde pasaban las tuberías.[105]

Pese a todos lo antes mencionados incumplimientos por parte de la aquí apelada, conviene acentuar que, según expresamos previamente, la defensa principal de esta en su *Contestación a la demanda enmendada* fue que el contrato de arrendamiento suscrito entre las partes fue a los fines de que esta destinara la propiedad para un cuido de menores. Sin embargo, debido a ciertas fallas estructurales de la propiedad, las agencias pertinentes prohibieron el uso de esta para dichos fines. Por lo que se vio obligada a cerrar el local y entregar la propiedad a la parte apelante.

En lo que respecta a los contratos de arrendamiento, cuando se lleva a cabo este tipo de acuerdo, el arrendador está obligado a hacer todas las

---

[101] Transcripción de la Prueba Oral (TPO), a la pág. 23, líneas 15-19.
[102] *Íd.,* a la pág. 53, líneas 18-21.
[103] *Íd.,* a la pág. 79, líneas 16-20.
[104] *Íd.*, a la pág. 53, líneas 22-25.
[105] *Íd.*, a las págs. 12-13, líneas 22-25 y 1-2, respectivamente.

reparaciones necesarias a los fines de conservar la cosa en estado de servir para el uso al cual ha sido destinada.[106]

Surge de la prueba admitida que la parte apelada confrontó problemas relacionados con la filtración, aguas negras y levantamiento del piso, así como problemas eléctricos y falta de luz por un periodo de cuatro (4) años, por lo que operaba con una planta eléctrica.[107] No obstante, surge del expediente, que la parte apelante negó responsabilidad inicial sobre la situación de las filtraciones al indicar que no era responsable de repararlas porque fueron provocadas por la propia negligencia de la parte apelada.[108] Asimismo, la parte apelante le informó a la parte apelada que no le correspondía la reparación del problema eléctrico.[109] En consideración, a lo anterior, la parte apelada le dirigió una comunicación a la parte apelante para informarle que iba a desalojar las facilidades debido a los problemas con las losetas, agua, y electricidad.[110] Expresó que no podía manejar su negocio desde esas instalaciones debido a que no podía operar un centro de niños con aguas negras, sin iluminación, y sin electricidad.[111]

Por todo lo antes expuesto, así como en vista del derecho aplicable a la controversia, concluimos que el tribunal *a quo* no abusó de su discreción al concluir que dado a que las partes del título incumplieron con sus respectivas obligaciones contractuales cada una estaba impedida de exigirle a la otra la contra prestación. Más aún, cuando el tribunal condenó a la parte apelada pagarle a la parte apelante la cantidad de $3,982.50 dólares por concepto de penalidades y recargos más el correspondiente aumento escalonado en los cánones de arrendamiento pactados, tal cual fue admitido por la propia parte apelada. Sabido es que cuando el demandado admite la contraprestación sin reserva ni protesta alguna, aun cuando pudo comprobar los defectos, el juzgador de instancia no podrá relevar por completo a esta parte de su contraprestación, si no que

---

[106] Artículo 1444 (2) del Código Civil de 1930, *supra.*
[107] TPO*,* a la pág. 69, líneas 6-17.
[108] TPO a la pág. 68, líneas 8-16.
[109] *Íd.*
[110] *Íd.,* a las págs. 74-75, líneas 21-25 y 1-7, respectivamente.
[111] *Íd.,* a la pág. 75, líneas 8-14.

reconocerá una disminución proporcional en el precio en razón de lo no cumplido o de los defectos de la contraprestación.[112]

Por último, precisa puntualizar que, como bien señala la parte apelante en su escrito de apelación, el foro primario aplicó incorrectamente el Código Civil de 2020, pese a que, en este caso, es de aplicación el derogado Código de 1930. Ahora bien, lo anterior, no es suficiente para variar el dictamen apelado. Es norma harta conocida que apelación se da contra el dictamen y no contra los fundamentos.[113]

En mérito de todo los antes expuesto, concluimos que no se cometieron ninguno de los cinco (5) errores esgrimidos por la parte apelante, por lo que procede confirmar la *Sentencia* apelada.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[112] *Álvarez v. Rivera*, supra, a la pág. 22.

[113] *Pueblo de Puerto Rico v. José Pérez Rodríguez*, 159 DPR 554, 566 (2003); *Díaz Martínez v. Policía de Puerto Rico*, 134 DPR 144, 157 (1993); *Raquel Álvarez Figueredo v. Sebastián González Lamela*, 134 DPR 374, 380 (1993); *Asociación de Pescadores de Punta Figueras, Inc. et al. v. Marina de Puerto del Rey, Inc. et al.*, 155 DPR 906, 920 (2001).